**IN THE COURT OF APPEALS OF IOWA**

No. 21-0405
Filed July 21, 2021

**IN THE INTEREST OF H.S. and H.S.,**
**Minor Children,**

**C.S., Mother,**
        Appellant.
_____

        Appeal from the Iowa District Court for Iowa County, Russell G. Keast,

District Associate Judge.

        A mother appeals the termination of her parental rights.  **AFFIRMED.**

        Peter Stiefel, Victor (until withdrawal), and Rebecca Petig, Grinnell, for

appellant mother.

        Thomas J. Miller, Attorney General, and Toby J. Gordon, Assistant Attorney

General, for appellee State.

        Robert W. Davison, Cedar Rapids, attorney and guardian ad litem for minor

children.

        Considered by Bower, C.J., May, J., and Scott, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206

(2021).

**SCOTT, Senior Judge.**

A mother appeals the termination of her parental rights to her two children—Ha., born in 2018; and Hu., born in 2019—pursuant to Iowa Code section 232.116(1)(h) (2020).[1] She challenges the sufficiency of the evidence supporting the ground for termination, argues termination is contrary to the children's best interests, asserts the court should have applied the exception to termination contained in Iowa Code section 232.116(3)(c), and requests additional time to work toward reunification.

## I.     Background

The family came to the attention of the Iowa Department of Human Services (DHS) in or about September 2019 upon allegations of sexual abuse and reports that the parents were leaving Ha. with other families.  It was learned the parents and Ha. came from Florida[2] to Iowa in January, along with the mother's other six children, to have Ha. adopted.  The parents left the child with the M. family, their initial prospect for adoption, for several months after coming to Iowa.  Hu. was born in June, upon which the mother also asked the M. family to take that child in; they declined.  The M. family returned Ha. to the parents in September following a breakdown of adoption negotiation, after which the parents left Ha. with their neighbors, the B. family, and advised them they no longer wanted the child.  According to the parents' testimony, the B. family only served as babysitters.  Nevertheless, the child stayed with the B. family for roughly three weeks, after

---

[1] The father's rights were also terminated.  He does not appeal.
[2] Florida child services officials reported the family moved from that state due to the same concern that the parents were leaving the child with others.

which the parents demanded her return. The parents returned the child to the B. family shortly thereafter, and the B. family contacted DHS. Both parents testified they left the child with the B. family on this occasion to take the mother's older six children to a water park.

On September 26, based on the parents frequently leaving the child in the care of others, the State sought and obtained an order for temporary removal of Ha. from the parents' care. At the time Ha. was removed, she was still staying with the B. family. She was ultimately placed in foster care. The State filed a child-in-need-of-assistance (CINA) petition, which was granted in October pursuant to stipulation of the parties under Iowa Code section 232.2(6)(c)(2) (2019). In November, the State filed a CINA petition as to Hu., as well as the mother's other six children. In late December, a Florida court order was entered placing the mother's other six children in their father's care, and the father retrieved the children from Iowa and returned to Florida. On December 29, DHS sought temporary removal of Hu., upon receiving information the parents planned to return to Florida, which the court granted the same date.

The same day Hu. was removed, the parents vacated the family home and returned to Florida. The father testified the parents decided to return to Florida to be closer to the mother's other children. In its February 2020 permanency order, the juvenile court directed the State to institute termination proceedings as to Ha. The State did so shortly thereafter. The court also confirmed removal of Hu. In March, the court adjudicated Hu. CINA pursuant to Iowa Code section 232.2(6)(c)(2) and (n). By April, the children were in separate foster homes and had not seen their parents since late December 2019. By June 2020, DHS

recommended the State initiate termination proceedings as to Hu. as well, and the State did so. Also in June, DHS initiated a reunification study of the parents' home pursuant to the Interstate Compact on Placement of Children. The home study was completed in July and was not approved.

The matter proceeded to trial over two days in September and December. By the time of the first day of trial in September, with the exception of three visits around the time of trial, the parents had not seen their children in person since leaving Iowa in December 2019. By the second day of trial in December 2020, the parents had not had any additional in-person visits. Following trial, the court found sufficient evidence for termination under section 232.116(1)(h) (2020), found termination to be in the children's best interests, and declined to apply a statutory exception to termination. The court ordered that custody and guardianship of the children be placed in their respective pre-adoptive foster placements. The mother appeals.

## II. Standard of Review

Appellate review of orders terminating parental rights is de novo. *In re A.B.*, 956 N.W.2d 162, 168 (Iowa 2021); *In re C.Z.*, 956 N.W.2d 113, 119 (Iowa 2021). Our primary consideration is the best interests of the children, *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006), the defining elements of which are the children's safety and need for a permanent home. *In re H.S.*, 805 N.W.2d 737, 748 (Iowa 2011).

## III.     Analysis

### A.     Sufficiency of Evidence

The mother challenges the sufficiency of the evidence supporting termination under section 232.116(1)(h).  She challenges the State's establishment of the third element as to Ha. and the fourth element as to both children.

The third element requires that "[t]he child has been removed from the physical custody of the child's parents for" the statutory period.  Iowa Code § 232.116(1)(h)(3).  The mother argues Ha. was never removed from her physical custody because she was residing with the B. family at the time of removal.  True, to "remove from physical custody" requires "a change from physical custody to lack of physical custody," because it ensures "a parent has had a chance at physical custody in the past that has been unsuccessful" before termination occurs.  *In re C.F.-H.*, 889 N.W.2d 201, 207 (Iowa 2016).  And "mere lack of physical custody is [not] sufficient to satisfy the statutory requirement of" removal.  *Id.* at 208.  The mother claims Ha. was in the physical custody of the B. family so the statute was not satisfied.  We disagree.  The mother had a chance at physical custody and, but for the removal order, she could have resumed care of the child from the B. family, as she had already done once shortly before removal.  *See In re A.F.*, No. 16-2098, 2017 WL 936207, at *3 (Iowa Ct. App. Mar. 8, 2017).  There was a change in physical custody to an absence of physical custody, so the element was satisfied.  *C.F.-H.*, 889 N.W.2d at 207.

We turn to the fourth element, which requires a showing the children could not be returned to the mother's care at the time of the termination hearing.  *See*

Iowa Code § 232.116(1)(h)(4) (requiring clear and convincing evidence that the children cannot be returned to the custody of their parents at the present time); *In re D.W.*, 791 N.W.2d 703, 707 (interpreting the statutory language "at the present time" to mean "at the time of the termination hearing"). The mother argues

> Because of the progress the mother had made with the case permanency plan . . . the children would not have been exposed to harm that would amount to a new child in need of assistance adjudication if they had returned to her care . . . .

At trial, while acknowledging the parents participated in some services in Florida, the DHS worker recommended the parents' rights should be terminated based on the parents' lack of noticeable progress; the children's need for permanency; and continuing concerns for issues of domestic violence, the mother's mental health, and the father's substance abuse. The mother knew full well that returning to Florida to be closer to her other children (who she lost custody of) would be a barrier to services and reunification. As a result, the parents did not progress beyond fully-supervised visits and therefore never demonstrated their ability to care for the children or maintain long-term care of them, which they failed to do at all times these young children were in their care. The DHS worker testified that if the children were returned to the parents in Florida, the State would not offer the family any services because the reunification study of the parents' home was not approved and the children could not be moved to Florida absent an approved home study. The completed home study noted various continuing concerns for children to be placed in the parents' care.

Upon our de novo review, we find the evidence sufficient to show the children could not be returned to the mother's care and to support termination of her parental rights.

B.     Best Interests

We turn to the mother's best-interests challenge. In determining whether termination is in the best interests of children, we "give primary consideration to the child[ren]'s safety, to the best placement for furthering the long-term nurturing and growth of the child[ren], and to the physical, mental, and emotional condition and needs of the child[ren]." Iowa Code § 232.116(2). The mother argues:

> Termination of [her] rights to both children is not in either child's best interest because the mother's stable residence, consistency with visits, and compliance with the case permanency plan have put her in a position where she can provide for the children's safety, long-term nurturing and growth, and for their physical, mental, and emotional health.

We have already concluded the children could not be returned to the mother's care. And the mother has hardly seen her children since they were each removed. As noted, the defining elements of a child's best interests are safety and need for a permanent home. *H.S.*, 805 N.W.2d at 748. "It is well-settled law that we cannot deprive child[ren] of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will . . . be able to provide a stable home for the child[ren]." *In re A.B.*, 815 N.W.2d 764, 777 (Iowa 2012) (quoting *In re P.L.*, 778 N.W.2d 33, 39 (Iowa 2010)). Upon our review, and given these children's young age and lack of the mother's physical presence in their lives, we conclude these children's best interests are best served by providing permanency and stability now. *See id.* at 778 ("It is simply not in the best interests

of children to continue to keep them in temporary foster homes while the natural parents get their lives together." (quoting *In re C.K.*, 558 N.W.2d 170, 175 (Iowa 1997))). Furthermore, the children are integrated into their foster homes and are bonded to their foster families, who are willing to adopt, and we agree termination followed by adoption is in the children's best interests. *See* Iowa Code § 232.116(2)(b).

### C. Statutory Exception

The mother requests the application of the statutory exception to termination contained in Iowa Code section 232.116(3)(c), which allows the court to forego terminating parental rights upon "clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." While we acknowledge some bond, it can only be described as limited at best given these children's young age, placement outside of their parents' care for most of their short lives, and lack of the mother's physical presence. Upon our de novo review, we find the evidence insufficient to show "termination would be detrimental to the child[ren] . . . due to the closeness of the parent-child relationship." *See In re A.S.*, 906 N.W.2d 467, 476 (Iowa 2018) (noting parent bears burden to establish exception to termination). We therefore decline to apply the statutory exception to termination. Alternatively, we conclude application of the exception would be contrary to the children's best interests.

### D. Additional Time

Finally, the mother requests an additional six months to work toward reunification. If, following a termination hearing, the court does not terminate parental rights but finds there is clear and convincing evidence that a child is a

child in need of assistance, the court may enter an order in accordance with section 232.104(2)(b). Iowa Code § 232.117(5). Section 232.104(2)(b) affords the juvenile court the option to continue placement of a child for an additional six months if the court finds "the need for removal . . . will no longer exist at the end of the additional six-month period."

Both parents were steadfast in their intention to remain in Florida to battle for the mother's other children. So nothing is going to change, and we do not find "the need for removal . . . will no longer exist at the end of the additional six-month period." Iowa Code § 232.104(2)(b). We deny the mother's request for an additional time.

## IV. Conclusion

We affirm the termination of the mother's parental rights.

**AFFIRMED.**